## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BUTLER COMMUNITY COLLEGE,

Plaintiff,

vs.

EMPLOYERS MUTUAL CASUALTY
COMPANY,

Defendant.

Case No.

## <u>COMPLAINT</u>

The plaintiff, Butler Community College ("the College"), for its Complaint against the defendant, Employers Mutual Casualty Company ("EMC"), alleges:

## I. NATURE OF THE ACTION

1.      This is an insurance coverage action for breach of contract and, in the alternative, declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. In the underlying action filed in this District, styled, *Roger Mathews v. Butler Community College*, No. 17-1175-EFM ("the Lawsuit"), on March 5, 2020, a money judgment was entered against the College based on claims under the federal and state acts relating to age discrimination in employment. The Jury Verdict, Judgment, and Memorandum and Order are attached as Exhibits A, B and C respectively. The College seeks a determination that EMC has a duty to indemnify the College under the *Linebacker Public Officials and Employment Practices Liability Declarations*, Form CL7000A (10-12), Policy No. 5K33045, for the policy period July 1, 2015 through July 1, 2016 ("the Policy"), attached hereto as Exhibit D.

## II. THE PARTIES

2.      The College is a quasi-municipal corporation under the laws of the State of Kansas and has its principal place of business in Butler County, Kansas.

3.      EMC is incorporated under the laws of the State of Iowa, with its headquarters and principal place of business located at 717 Mulberry St., Des Moines, Iowa 50309.

## III. JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

5.      EMC defended the College in the Lawsuit under the Policy based on a reservation of rights. An actual justiciable controversy between the College and EMC exists within the meaning of 28 U.S.C. § 2201 regarding EMC's duty to indemnify the College under the Policy with respect to the Judgment entered in the Lawsuit.

6.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district and the defendant resides in this judicial district.

## IV. THE UNDERLYING LAWSUIT

8.      In the Lawsuit, the instructions as submitted to the jury, state that plaintiff Roger Mathews claimed the College constructively discharged him because of his age, and in retaliation for his expressed opposition to age discrimination.

9.      The jury rendered a verdict for the plaintiff on the federal Age Discrimination in Employment Act ("ADEA"), and the Kansas Act Against Age Discrimination ("KADEA") claims. For "lost back pay and benefits," an item of damages recoverable under both Acts,  the jury awarded $298,000, and for "pain, suffering and humiliation," an item of damages recoverable only under the KADEA, it awarded the maximum allowed, $2,000.

10.     After the trial, on March 5, 2020, District Judge Eric Melgren awarded $298,000 in liquidated damages under the ADEA, $92,000 in front pay under the ADEA, and $254,046 in attorneys' fees under the ADEA, and then entered the Judgment for a total award of $944,046.

11.     On April 15, 2020 clerk of the district court taxed against the College $5,258.71 for costs.

## V. THE INSURANCE POLICY

12.     EMC issued *Linebacker Public Officials and Employment Practices Liability Declarations*, Form CL7000A (10-12), Policy No. 5K33045, to the College for the policy period July1, 2015 through July 1, 2016 ("the Policy").

13.     The College is listed in the Policy's schedule of named insureds.

14.    The Policy provides insurance liability limits of $1 million for each occurrence, and $2 million aggregate for the policy term, with a $10,000 deductible for each claim.

15.    The Judgment is within the coverage of the Policy's Insuring Agreement at Section 1, Coverage B—Employment Practices Liability:

> We will pay for "defense expense(s) and/or those sums that the insured becomes legally obligated to pay as "damages" because of an "employment wrongful act" rendered in discharging duties on behalf of the insured named in the Declarations.

16.    At Section VI, Paragraph 16.a, the Policy defines "employment wrongful act" as "any of the following actual or alleged practices . . ." including:

**\*\*\*\***

> **(3)** Wrongful: demotion, retaliation, evaluation, supervision, reassignment, or discipline;

> **(4)** Wrongful termination of employment including retaliatory or constructive discharge;

**\*\*\*\***

> **(7)** Any employment related coercion discrimination, or humiliation, as a consequence of race, color, creed, national origin, marital status, medical condition, gender, age, physical and or mental impairments, pregnancy, sexual orientation or preference or other status that is protected pursuant to any applicable federal, state, or local employment ordinance or statute.

**\*\*\*\***

17.    The Judgment involves "employment wrongful acts" within the Policy's meaning.

18.    EMC's Policy is subject to policy exclusions. No exclusion applies to limit coverage for the Judgment awards, in whole or part.

## VI. DEMAND FOR COVERAGE AND RESERVATION OF RIGHTS

19.    The College tendered the Lawsuit to EMC seeking coverage under the Policy.

20.    By letter dated November 17, 2015, EMC agreed to defend the College against the Lawsuit, but reserved certain rights under the Policy. The College has satisfied all conditions precedent under the Policy to such defense and to indemnification.

21.    EMC sent the College a May 9, 2019 letter further addressing its defense of the Lawsuit and its reservation of rights under the policy.

22.    On March 17, 2020, after the jury's verdict, EMC sent the College a letter stating its position on insurance coverage for the Judgment and denying coverage for the back pay award, the front pay award, and the liquidated damages award, but admitting coverage for the $254,046 attorneys' fees award and the $2,000 award for "pain, suffering and humiliation."

23.    On March 20, 2020, the College demanded that EMC pay the Judgment in full. EMC has not formally responded to that demand.

24.    EMC has wrongfully denied coverage under the Policy for certain Judgment awards.

## COUNT I
## BREACH OF CONTRACT

25.     The College incorporates the allegations in paragraphs 1- 36.

26.     EMC's March 17, 2020 letter repudiates EMC's duty to indemnify the College against the Judgment awards for back pay, front pay, and liquidated damages.

27.     EMC has, therefore, breached the Policy.

28.     The College will suffer damages in the amount of the Judgment, with judgment interest, and its attorney fees and litigation expenses for this cause of action based on EMC's failure to pay the Judgment without just cause or excuse.

## COUNT II
## DECLARATORY JUDGMENT

29.     The College incorporates the allegations in paragraphs 1- 36.

30.     The College and EMC disagree about whether the Policy covers certain awards in the Judgment.

31.     In the event that Court decides that this controversy has not reached the stage at which the College can obtain a contract remedy, pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2201, the College requests that the Court declare that EMC has a duty to indemnify and hold harmless the College for the awards in the Judgment, because they are each within Coverage A and no exclusion applies to limit that coverage.

## PRAYER FOR RELIEF

32.     Plaintiff Butler Community College prays as follows: (a) For a breach of contract judgment against Employers Mutual Casualty Company and a damages award in the amount of the Judgment, with judgment interest, in the Lawsuit, and the College's attorney fees and litigation expenses in this action; and/or (b) For a declaration that Employers Mutual Casualty Company has a duty to indemnify and hold harmless the College for the Judgment in the Lawsuit; and (c) For such other and further relief this Court may deem equitable, just and proper.

Respectfully submitted,

/s/ F. James Robinson Jr.
F. James Robinson Jr, #11589
Gaye B. Tibbets, #13240
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Ste. 950
Wichita, KS 67202-2209
Telephone: (316) 265-7741
Facsimile: (316) 267-7803
E-mail: robinson@hitefanning.com
E-mail: tibbets@hitefanning.com

-and-

Ray Connell, #8577
Connell & Connell
318 W. Central Ave.
El Dorado, KS  67042
Telephone: (316) 321-4300
Facsimile: (316) 321-1530
E-mail: ray@connellandconnell.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**FILED**
U.S. District Court
District of Kansas

JAN 1 0 2020

Clerk, U.S. District Court
By_____ Ccm _____Deputy Clerk

ROGER MATHEWS, )
)
      Plaintiff, )
)
v )    Case No. 17-1175-EFM
)
BUTLER COMMUNITY COLLEGE, )
)
      Defendant. )
_____)

### VERDICT FORM

    WE, the Jury, impaneled and sworn in the above entitled case, upon our oaths, do make the following answers to the following questions propounded by the Court.

    1.    Do you find that Butler Community College is liable to Roger Mathews for constructively discharging him because of his age?

        _✓_ Yes

        _____ No

    2.    Do you find that Butler Community College is liable to Roger Mathews for constructively discharging him in retaliation for his expressed opposition to age discrimination?

        _✓_ Yes

        _____ No

EXHIBIT A

**[If your answers to the two questions above are "No," STOP. Have your foreperson sign and date this form and notify the courtroom deputy that you have completed your deliberations. Answer the following questions regarding damages only if you answered "Yes" to Questions Nos. 1 or 2.]**

3.      What monetary amount, if any, should Roger Mathews be awarded for his lost back pay and benefits?

$ _298,000_

4.      What monetary amount, if any, not to exceed $2,000, should Roger Mathews' receive for his pain, suffering, and humiliation?

$ _2,000_

5.      Do you find that any unlawful conduct of Butler Community College was willful?

_✓_ Yes

_____ No

6.      Was agreement on each of the above five questions unanimous?

_✓_ Yes

_____ No

Date: _1/10/2020_          Presiding Juror: _

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ROGER MATHEWS,

      *Plaintiff,*

vs.

                      Case No. 17-1175-EFM

BUTLER COMMUNITY COLLEGE,

      *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Roger Mathews brought suit against Defendant Butler Community College for age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA") and the Kansas Age Discrimination in Employment Act ("KADEA"). After a four-day jury trial, the jury found Defendant liable to Plaintiff for constructive discharge and retaliation. The jury awarded Plaintiff $298,000 for back pay and benefits and $2,000 for pain and suffering.

Plaintiff is now before the Court requesting $298,000 in liquidated damages, $195,615 in front pay, and $254,046 in attorney fees (Docs. 103, 106). Defendant does not oppose Plaintiff's liquidated damages or attorney fees request. However, Defendant contends that Plaintiff should not be granted front pay. For the reasons explained in more detail below, the Court grants in part and denies in part Plaintiff's Motion for Liquidated Damages and Front Pay (Doc. 103) and grants Plaintiff's Motion for Attorney Fees (Doc. 106).

# EXHIBIT B

## I.  Factual and Procedural Background

Plaintiff worked for Defendant from 1980 through 2015.  In 2015, Plaintiff was 64 years old, and issues surrounding his employment began.[1]  In mid-June 2015, Plaintiff began consulting with the Martin Pringle law firm in Wichita, Kansas regarding these issues.

Plaintiff filed suit against Defendant alleging age discrimination and retaliation in July 2017.  Significant written discovery occurred throughout the case.  Six depositions were conducted.  Defendant filed a Motion for Summary Judgment, which Plaintiff opposed, that was denied.  Two attempts to resolve the lawsuit through mediation also occurred.

Trial ultimately commenced on January 6, 2020, and it concluded on January 10.  The jury found in Plaintiff's favor on his age discrimination claim, based on constructive discharge, and his retaliation claim based on a complaint of age discrimination.  They awarded $298,000 in back pay.  The jury also awarded the statutory maximum of $2,000 on Plaintiff's pain and suffering damages under the KADEA.  In addition, the jury found that Defendant's conduct was willful.

Post-trial, Plaintiff filed a Motion for Liquidated Damages and Front Pay.  In addition, Plaintiff filed a Motion for Attorney Fees.  Defendant only opposes the award of front pay.  It argues that an award of front pay would be inappropriate because Plaintiff waived his argument for front pay by failing to request it in the Pretrial Order, by failing to present evidence of entitlement to it during trial, and because Plaintiff has already been made whole.

---

[1] Further detail on the factual background of this case is set forth in this Court's prior summary judgment order.  *See* Doc. 62.  To the extent it is relevant to the award of liquidated damages, front pay, and attorney fees, the Court incorporates it by reference here.

## II.     Analysis

Plaintiff seeks liquidated damages, front pay, and attorney fees.  The Court will discuss each in turn.

### A.     Liquidated Damages

Plaintiff seeks $298,000 in liquidated damages.  Under the ADEA, an award of liquidated damages is required if a defendant's conduct is found to be willful.[2]  A "liquidated damages award should be equal to the award for back pay . . . ."[3]

Here, the jury found that Defendant's conduct was willful.  It also awarded $298,000 in back pay.  Thus, Plaintiff is entitled to an equal amount in liquidated damages of $298,000.

### B.     Front Pay

Plaintiff also seeks $195,615 in front pay damages.  This calculation is based on the payment of Plaintiff's salary of $197,685 ($65,955 per year for the next three years) minus the amount of pay he receives from his current part-time job of approximately $2,250 ($750 per year for three years).[4]  Defendant contends that Plaintiff is not entitled to any front pay, but if he is awarded any, it should be capped at $92,000.

" 'Front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement' to make the plaintiff whole."[5]  "Although

---

[2] *See* 29 U.S.C. § 626(b); *see also Greene v. Safeway Stores, Inc.*, 210 F.3d 1237, 1246 (10th Cir. 2000) (citations omitted).

[3] *Blim v. W. Elec. Co., Inc.*, 731 F.2d 1473, 1480 (10th Cir. 1984) (superseded by statute on other grounds).

[4] Testimony at trial demonstrated that Plaintiff began teaching part-time after his employment ended with Defendant but only earned approximately $2,000 to $3,000 over the past four years.

[5] *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1145 (10th Cir. 2006) (quoting *Abuan v. Level 3 Commc'n, Inc.*, 353 F.3d 1158, 1176 (10th Cir. 2003).

front pay may be appropriate when reinstatement is not possible, it is not a mandatory remedy."[6]

It is within the Court's discretion as to the amount, if any, to be awarded.[7]

> The following facts are relevant in assessing such an award:

> work life expectancy, salary and benefits at the time of termination, any potential increase in salary through regular promotions and cost of living adjustment, the reasonable availability of other work opportunities, the period within which the plaintiff may become re-employed with reasonable efforts, and methods to discount any award to net present value.

> In formulating a front-pay award the district court may consider all evidence presented at trial concerning the individualized circumstances of both the employee and employer, but it must avoid granting the plaintiff a windfall.[8]

A plaintiff is not required to present evidence of front pay through expert testimony.[9]   The evidence, however, must be sufficient to support an award.[10]

   In this case, both parties agree that reinstatement is not a feasible option.   Defendant, however, contends that Plaintiff is not entitled to front pay for three reasons.   It states that (1) Plaintiff waived his argument for front pay by failing to request it in the Pretrial Order; (2) Plaintiff has already been made whole; and (3) Plaintiff failed to present evidence of entitlement to it during trial.

   As to Defendant's contention that Plaintiff waived his argument for a front pay award, the Court disagrees.   Defendant states that front pay is the alternative to reinstatement, and Plaintiff

---

[6] *McInerney v. United Air Lines, Inc.*, 463 F. App'x 709, 725 (10th Cir. 2011) (citation omitted).

[7] *Id.*

[8] *McInnis*, 458 F.3d at 1146 (citation omitted).

[9] *Womack v. Delaware Highlands AL Services Provider, LLC*, 2012 WL 13029498, at *7 (D. Kan. 2012) (citations omitted).

[10] *Id.*

never requested reinstatement in the Pretrial Order. However, Plaintiff's damages calculation in the Pretrial Order stated that he sought "lost salary (to anticipated age of retirement)." This statement encompasses future damages or the possibility of front pay. Furthermore, in the Pretrial Order, Defendant's assertion of the defense that Plaintiff was not entitled to recovery of front pay demonstrates Defendant's notice of the possibility of front pay. Finally, Defendant's Motion in Limine addressed front pay and asserted that Plaintiff should not be able to request liquidated damages for future wages or future fringe benefits.[11]

Defendant also asserts that Plaintiff is not entitled to front pay because Plaintiff has already been made whole. During trial, Plaintiff requested approximately $265,000 in back pay and an unspecified amount in fringe benefits. The jury awarded $298,000 for wage and benefit damages. Thus, Defendant asserts that Plaintiff received an award that made him whole. In addition, Defendant contends that if you add the $298,000 that Plaintiff will receive in liquidated damages, Plaintiff will receive more than two times as much as he requested at trial. Accordingly, Defendant contends that Plaintiff should not receive front pay.

Plaintiff, however, could not request liquidated damages at trial because it was not an issue for the jury. Thus, Plaintiff could not ask for a specific dollar amount in trial but instead could only seek the jury's finding of whether Defendant's actions were willful. In addition, reinstatement and front pay are not issues for the jury. Instead, it is an equitable issue to be decided by the Court.[12] Finally, the ADEA allows for recovery of back pay, front pay, and liquidated

---

[11] Defendant has an additional contention that Plaintiff's damages should be capped due to an amount requested in the Pretrial Order. The Court will address this argument when discussing the sufficiency and amount of Plaintiff's damages set forth at trial.

[12] *See McInnis*, 458 F.3d at 1145-46 (citation omitted).

damages.[13]  Thus, the Court will not take the limited view that Plaintiff has already been made whole due to Plaintiff's evidence at trial of damages for back pay or that Plaintiff is also receiving liquidated damages.

Finally, Defendant argues that Plaintiff did not present sufficient evidence at trial of his future wage loss.  It contends that Plaintiff had discussed retirement far before he took it and that the evidence showed that Plaintiff may have retired at any time.  The problem with this argument is that Plaintiff did not retire.  The jury made the finding that Plaintiff was constructively discharged and retaliated against for filing an age discrimination complaint.  Thus, Plaintiff's end of employment with Defendant cannot be categorized as voluntary or the date at which he would have retired.  Furthermore, Plaintiff's inquiry regarding retirement benefits prior to his termination does not demonstrate the date or timeframe in which Plaintiff intended to retire.

"[A]n award of future damages in lieu of reinstatement furthers the remedial purposes of the ADEA by assuring that the aggrieved party is returned as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct."[14]  Plaintiff specifically testified that he would not have retired until his mid-seventies.  In addition, Plaintiff presented evidence that he continues to work part-time at a place in which he could find employment.  The evidence also showed that at the time of Plaintiff's constructive discharge, he was 65 years old and making $65,955 a year.  Thus, there was sufficient evidence presented at trial to demonstrate future wage loss.

---

[13] The Court recognizes that the award of liquidated damages may be a factor in determining the amount and whether front pay is appropriate. *See Price v. Marshall Erdman & Associates, Inc.*, 966 F.2d 320, 326 (7th Cir. 1992) (noting that the presence or absence of liquidated damages may play a small role in the determination of the entitlement to front pay).

[14] *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1173 (10th Cir. 1985).

The only remaining question is the appropriate amount of front pay damages. As noted above, Plaintiff testified that he would not have retired until his mid-seventies. He does not seek front pay for that amount of time but rather for three years, totaling $195,615. Defendant objects to the amount and contends that Plaintiff's amount should be capped at $92,000 due to the Pretrial Order. The Pretrial Order included a graph of damages. In the column related to "Lost salary (to anticipated age of retirement)," the amount listed was $390,000. Defendant contends that because Plaintiff already received $298,000 in damages (related to back pay), he is only entitled to an additional $92,000 in damages (for front pay) to equal his lost salary.

Front pay is an attempt to make a plaintiff whole, but it is not intended to grant a windfall.[15] Plaintiff has already been awarded approximately four years' worth of back pay. To award Plaintiff an additional three years of front pay would be granting him seven years' worth of compensatory damages in salary. Furthermore, Plaintiff's damages calculation in the Pretrial Order for lost salary to the anticipated age of retirement was $390,000. Plaintiff has already been awarded $298,000. Thus, the Court, in its discretion, caps the lost salary damage amount at $390,000—the amount in the Pretrial Order. Accordingly, the Court grants Plaintiff a front pay award of $92,000.[16]

## C.      Attorney Fees

Plaintiff seeks $254,046 in attorney fees. Defendant has agreed and stipulated that the attorney fees requested by Plaintiff are fair, reasonable, and necessary to properly prosecute the matter.

---

[15] *Whittington v. Nordam Group Inc.*, 429 F.3d 986, 1001 (10th Cir. 2005) (citation omitted).

[16] The Court notes that this equals an additional one and one-half years' worth of pay.

The ADEA requires an award of reasonable attorney's fees and costs to the prevailing party.[17] Plaintiff must demonstrate that he is the prevailing party and that the requested fees are reasonable.[18] A reasonable fee is determined by calculating a "lodestar amount" which is done by multiplying the number of hours reasonably spent by a reasonable hourly rate.[19] The party requesting the fee "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."[20]

Here, Plaintiff is the prevailing party. In addition, the attorney fee request is reasonable. Plaintiff attaches several exhibits to his motion containing billing records and an affidavit from one of his counsel. The hours expended on the case, 938 for two attorneys, a paralegal, and a paralegal assistant, are reasonable considering the length of time the case was litigated and the four-day jury trial. Furthermore, the hourly rate for the partner, senior associate, paralegal, and paralegal assistant are in proportion to the billing rates in the Wichita, Kansas area. Thus, the Court finds that the attorney fee request in the amount of $254,046 is reasonable and grants Plaintiff's motion.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Liquidated Damages and Front Pay (Doc. 103) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff is awarded $298,000 in liquidated damages. Plaintiff is awarded $92,000 in front pay.

---

[17] 29 U.S.C. § 626(b) (referencing 29 U.S.C. § 216(b)); *see also Dalal v. Alliant Techsystems, Inc.*, 182 F.3d 757, 760 (10th Cir. 1999) ("By reference to the Fair Labor Standards Act (29 U.S.C. § 216(b)), the ADEA requires the award of reasonable attorney's fees and costs to a prevailing party.").

[18] *Latin v. Bellio Trucking, Inc.*, 720 F. App'x 908, 910 (10th Cir. 2017).

[19] *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998).

[20] *Id.* (citation omitted).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorney Fees (Doc. 106) is

**GRANTED**.  Attorney's fees are granted in the amount of $254,046.

**IT IS SO ORDERED**.

Dated this 5th day of March, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

AO 450 (Rev. 5/85) Judgment in a Civil Case

# United States District Court

DISTRICT OF                                    KANSAS

ROGER MATHEWS,

                                  JUDGMENT IN A CIVIL CASE

                     Plaintiff,

       V.

                                    CASE NUMBER:  17-1175-EFM

BUTLER COMMUNITY COLLEGE,

                     Defendant.

☒ Jury Verdict. This action came before the Court for a trial by jury, The issues have been tried and the jury has rendered its verdict.

☒ Decision by Court. This action came before the Court. The issues have been considered and a decision has been rendered.

 IT IS ORDERED AND ADJUDGED

that Plaintiff recovers from Defendant damages in the amount of Three Hundred Thousand Dollars and 0/100 ($300,000) plus post-judgment interest at the rate of 1.55% as provided by law.

IT IS FURTHER ORDERED that pursuant to the M&O filed on March 5, 2020 at Doc. 110, Plaintiff's Motion for Liquidated Damages and Front Pay (Doc. 103) is GRANTED IN PART AND DENIED IN PART. Plaintiff is awarded $298,000 in liquidated damages. Plaintiff is awarded $92,000 in front pay.

IT IS FURTHER ORDERED that pursuant to the M&O filed on March 5, 2020 at Doc. 110, Plaintiff's Motion for Attorney Fees (Doc. 106) is GRANTED. Attorney's fees are granted in the amount of $254,046.

This case is now closed.

# EXHIBIT C

3/5/2020

*Date*

TIMOTHY M. O'BRIEN

*Clerk*

/s Cindy McKee

*(By) Deputy Clerk*

# ◢▬EMC Insurance Companies

```
EMPLOYERS MUTUAL CASUALTY COMPANY            PRIOR POLICY: 1K1-43-42
       L I N E B A C K E R   P U B L I C   O F F I C I A L S   A N D
       E M P L O Y M E N T   P R A C T I C E S   L I A B I L I T Y
                    D E C L A R A T I O N S
                                       *------------------------*
  POLICY PERIOD: FROM  07/01/15  TO  07/01/16    *    POLICY NUMBER    *
                                       * 5 K 3 - 3 0 - 4 5---16 *
                                       *------------------------*

     N A M E D   I N S U R E D              P R O D U C E R

  BUTLER COMMUNITY COLLEGE              INSURANCE CENTER, INC
  901 S HAVERHILL RD                   (EL DORADO)
  EL DORADO KS 67042-3225              120 W CENTRAL AVE
                                       PO BOX 981
                                       EL DORADO KS 67042-0981

                                       AGENT: AL 7265
     AGENCY BILL                       AGENT PHONE: 316-267-2467

  INSURED IS:  NOT FOR PROFIT ORG   BUSINESS DESCRIPTION:  COLLEGE

     ************************************************************
     *    T H I S   I S   A   C L A I M S   M A D E   P O L I C Y    *
     *         P L E A S E   R E A D   C A R E F U L L Y         *
     ************************************************************

          L I M I T S   O F   L I A B I L I T Y

          EACH LOSS                              $    1,000,000

          AGGREGATE FOR EACH POLICY TERM         $    2,000,000

          INSURED'S DEDUCTIBLE EACH CLAIM        $       10,000
          (INCLUDING DEFENSE EXPENSE)
```

---

**RETROACTIVE DATE AND EXCESS EXTENDED REPORTING PERIOD:**
**THIS INSURANCE DOES NOT APPLY TO WRONGFUL ACTS WHICH OCCUR**
**BEFORE THE RETROACTIVE DATE SHOWN BELOW.**
    **RETROACTIVE DATE: 09/01/90**
**AVAILABLE SUPPLEMENTAL EXTENDED REPORTING PERIOD: (UNLIMITED)**

---

```
                              ----------------------------------------
                              TOTAL ADVANCE PREMIUM $   7,843.00
                              ----------------------------------------

  COVERAGE IS PROVIDED FOR BOARD AND ALL EMPLOYEES

       (THE ADVANCE PREMIUM IS A MINIMUM PREMIUM FOR THE POLICY TERM)
              A $100 MINIMUM POLICY PREMIUM APPLIES
           IF POLICY IS CANCELLED AFTER THE EFFECTIVE DATE
```

---

```
  DATE OF ISSUE: 07/01/15 BPP                          CONTINUED
  FORM CL7000A (10-12)    BPP  04/15/15     019      L7    5K33045  1601
```

# EXHIBIT D

# ◢◤**EMC**Insurance Companies

```
EMPLOYERS MUTUAL CASUALTY COMPANY                    POLICY NUMBER: 5K3-30-45
BUTLER COMM COLLEGE              EFF DATE: 07/01/15     EXP DATE: 07/01/16

 FORMS APPLICABLE:
   CL7001(10/12)*, CL7110(01/08)*, CL7116(01/08)*, CL7128(10/12)*,
   CL7153(10/12)*, CL7156(01/15)*, CL7161(01/10)*, CL7176(10/12)*,
   CL7202(10/12)*, CL8317(10/12)*, IL7012(02/12)*, IL7131A(04/01)*,
   IL7137.1(01/08)*, IL7149(01/08)*, IL7326(02/12)*, IL7605(01/08)*,
   IL8383.2A(01/15)*, IL8384A(01/08)*
```

-------------------------------------------------------------------------------

DATE OF ISSUE: 07/01/15 BPP

# ◢◣EMC Insurance Companies

```
EMPLOYERS MUTUAL CASUALTY COMPANY              POLICY NUMBER: 5K3-30-45---16

BUTLER COMMUNITY COLLEGE           EFF DATE: 07/01/15    EXP DATE: 07/01/16

                   L I N E B A C K E R   P O L I C Y
                        D E C L A R A T I O N S
===============================================================================
                         ENDORSEMENT SCHEDULE

               EDITION
    FORM        DATE     DESCRIPTION/ADDITIONAL INFORMATION              PREMIUM
--------------------------------------------------------------------------------
*CL7001        10-12    LINEBACKER COVERAGE FORM
*CL7110        01-08    NUCLEAR ENERGY LIABILITY EXCLUSION
*CL7116        01-08    EXCL-DATA PROCESSORS E&O
*CL7128        10-12    TORT LIABILITY ENDORSEMENT
*CL7153        10-12    EXCL-FUNGI OR BACTERIA
*CL7156        01-15    CAP ON LOSSES CERT ACTS OF TERRORISM
*CL7161        01-10    EXCL PUNITIVE DMGS ACTS OF TERRORISM
*CL7176        10-12    EXTENDED REPORTING PERIOD AMENDATORY
*CL7202        10-12    DATA COMPROMISE EXCLUSION
*CL8317        10-12    POLICYHOLDER NOTICE
*IL7012        02-12    KS CHANGES - CANCELLATION/NONRENEWAL
*IL7131A       04-01    COMM'L POLICY ENDORSEMENT SCHEDULE
*IL7137.1      01-08    EXCL MIXED DUST PNEUMOCONIOSIS
*IL7149        01-08    COMMON POLICY CONDITIONS
*IL7326        02-12    CALCULATION OF PREMIUM
*IL7605        01-08    KANSAS COMPANY ELIMINATION
*IL8383.2A     01-15    DISCL PURSUANT TERRSM RISK INS. ACT      $       78
*IL8384A       01-08    TERRORISM NOTICE




    DATE OF ISSUE: 07/01/15
    FORM: IL7131A (ED. 04-01)        BPP       019     L7      5K33045  1601
```

# ◢◢EMC Insurance Companies

```
EMPLOYERS MUTUAL CASUALTY COMPANY            POLICY NUMBER: 5K3-30-45---16
BUTLER COMMUNITY COLLEGE             EFF DATE: 07/01/15    EXP DATE: 07/01/16
```

### T E R R O R I S M   N O T I C E

This insurance may include coverage for certified acts of terrorism as defined in the Terrorism Risk Insurance Act, as amended.

Attached you will find a disclosure, which identifies the specific charge for certified acts of terrorism.

```
     YOU MAY HAVE THE OPTION TO REJECT THIS TERRORISM COVERAGE
     --------------------------------------------------------

      For additional information, please contact your agent
```

```
DATE OF ISSUE: 07/01/15
FORM: IL8384A (01-08)          BPP          019      L7        5K33045   1601
```

◢◤**EMC** Insurance Companies

```
EMPLOYERS MUTUAL CASUALTY COMPANY        POLICY NUMBER: 5K3-30-45---16
BUTLER COMMUNITY COLLEGE        EFF DATE: 07/01/15    EXP DATE: 07/01/16
```

**THIS DISCLOSURE IS ATTACHED TO YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS DISLOSURE DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

D I S C L O S U R E   P U R S U A N T   T O
T E R R O R I S M   R I S K   I N S U R A N C E   A C T
--------------------------------------------------------------------
S C H E D U L E
Terrorism Premium (Certified Acts)  $78.00
--------------------------------------------------------------------

**A. Disclosure Of Premium:**
In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorism acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this disclosure or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses:**
The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. For losses occurring in 2015, the federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. Beginning on January 1, 2016, the federal share will decrease by one percentage point per calendar year until equal to 80% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses:**
If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**The following statement is required to be part of the disclosure notice in MISSOURI:**
The premium above is for certain losses resulting from certified acts of terrorism as covered pursuant to coverage provisions, limitations and exclusions in this policy. You should read the definition in your policy carefully, but generally speaking, "certified" acts of terrorism are acts that exceed $5 million in aggregate losses to the insurance industry and which are subsequently declared by the U.S. Secretary of the Treasury as a certified terrorist act under the Terrorism Risk Insurance Act. Some losses resulting from certified acts of terrorism are not covered. Read your policy and endorsements carefully.

```
  Includes copyrighted material of ISO Properties, Inc. with its permission
@    if .2A = .2A if 0115 = 0115 . ;gto lin2 .        i18383.2A 0115:Extra Line
```

**EMC** Insurance Companies

```
EMPLOYERS MUTUAL CASUALTY COMPANY              POLICY NO: 5K3-30-45---16
BUTLER COMM COLLEGE                            TRANSACTION: RENEWAL-01
                                               PRIOR POL: 1K1-43-42

                          TRANSACTION INFORMATION
                          -----------------------

POLICY TERM: 07/01/2015 TO 07/01/2016         TRANS DATE: 07/01/2015
ACCOUNT NAME: BUTLER COMM COLLEGE             CO/BR/AGENT: A/L/7265
ACCOUNT MAILING STATE: KS                     PROGRAM: KS
FINANCING: Y                                  BILLING METHOD: A
AUDIT FREQUENCY: N                            PROFIT SHARE: N
SIC: 8222
ACCOUNT ORIGINAL EFF DATE: 09/01/1995         TYPE OF POLICY: MONOLINE (10)
ACCOUNT FEIN:
                                              TRANS PREMIUM:        7843.00

 POLICY ID: BF        COMMISSION:  10.0%      PREMIUM:              7843.00
------------------------------------------------------------------------------
 ACCOUNT DOMICILE STATE: KS
------------------------------------------------------------------------------
```

EMC Insurance Companies

AO 450 (Rev. 5/85) Judgment in a Civil Case

# United States District Court

DISTRICT OF ———————————— KANSAS

ROGER MATHEWS,

**JUDGMENT IN A CIVIL CASE**

Plaintiff,

V.

CASE NUMBER: 17-1175-EFM

BUTLER COMMUNITY COLLEGE,

Defendant.

☒ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ Decision by Court. This action came before the Court. The issues have been considered and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

that Plaintiff recovers from Defendant damages in the amount of Three Hundred Thousand Dollars and 0/100 ($300,000) plus post-judgment interest at the rate of 1.55% as provided by law.

IT IS FURTHER ORDERED that pursuant to the M&O filed on March 5, 2020 at Doc. 110, Plaintiff's Motion for Liquidated Damages and Front Pay (Doc. 103) is GRANTED IN PART AND DENIED IN PART. Plaintiff is awarded $298,000 in liquidated damages. Plaintiff is awarded $92,000 in front pay.

IT IS FURTHER ORDERED that pursuant to the M&O filed on March 5, 2020 at Doc. 110, Plaintiff's Motion for Attorney Fees (Doc. 106) is GRANTED. Attorney's fees are granted in the amount of $254,046.

This case is now closed.

3/5/2020
_____
Date

TIMOTHY M. O'BRIEN
_____
Clerk

/s Cindy McKee
_____
(By) Deputy Clerk

# LINEBACKER PUBLIC OFFICIAL'S AND EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

## COVERAGES A AND B PROVIDE CLAIMS – MADE COVERAGE
## PLEASE READ THE ENTIRE FORM CAREFULLY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **Section II – Who is an Insured**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **Section VI – Definitions**.

## SECTION I – COVERAGES

1. **Insuring Agreement Coverage A – Public Officials Liability and Coverage B – Employment Practices Liability**

   a. **Public Officials Liability**

      We will pay for "defense expense(s)" and/or those sums that the insured becomes legally obligated to pay as "damages" because of a "public official's wrongful act" rendered in discharging duties on behalf of the insured named in the Declarations.

   b. **Employment Practices Liability**

      We will pay for "defense expense(s)" and/or those sums that the insured becomes legally obligated to pay as "damages" because of an "employment wrongful act" rendered in discharging duties on behalf of the insured named in the Declarations.

2. **Coverage Activation**

   a. "Damages" are paid excess of the deductible stated in the Declarations provided that:

      (1) The "wrongful act" on which the claim is based occurs on or after the "retroactive date" shown in the Declarations and not after the end of the policy period; and

      (2) The claim is first made against any past, present or future insured:

         (a) During the policy period, or

         (b) If extended reporting period applies, during that period.

   b. A claim will be deemed to have been made at the earliest of the following times:

      (1) When a claim is received by any insured;

      (2) When a claim is received by us; or

      (3) When you become aware of a "wrongful act" which may give rise to a claim being made against you. You must give prompt written notice to us of such circumstances no later than:

         (a) The end of the policy period; or

         (b) If the Basic Extended Reporting Period applies, the end of the Basic Extended Reporting Period.

   c. This insurance does not apply to any claim arising out of any "wrongful act" that occurs prior to the effective date of this policy or prior to the first policy issued by us that is an uninterrupted renewal that was either:

      (1) The subject of any demand, claim or other proceeding which was initiated against the insured; or

      (2) Based upon facts and circumstances which would cause a reasonable person to believe a claim would be made and which was known to any insured.

   d. All "wrongful acts" contained within the same claim shall be deemed one "wrongful act" and such related "wrongful acts" shall be deemed to occur at the time of the first "wrongful act".

3. **Defense and "Defense Expenses"**

   a. With regard to any claim we defend:

      (1) "Defense expenses" are subject to the deductible, and

      (2) We shall have the right and duty to select counsel.

      (3) Our duty to pay "defense expenses" begins only after we are notified of a claim. Any previous expenses incurred are not covered and will not apply with respect to your deductible obligations.

      (4) Our obligation to pay further "defense expenses" ends after the first judgment has been entered except for appeals of such judgment made by the claimant.

**(5)** We do not have a duty to defend the insured against any claim, for "damages" or relief or redress in any form, to which this insurance does not apply.

**b.** We will provide defense and pay "damages" of any claim seeking monetary damages that are covered by this policy. With regard to these claims:

**(1)** We shall pay "defense expenses" incurred in the defense of a covered claim, in addition to the applicable limit of liability.

**(2)** We are not obligated to defend any claim or to pay any "defense expense" after our limit of liability has been exhausted by payment of "damages".

**(3)** We will pay plaintiff/claimant attorney's fees/expenses, if awarded in satisfaction of a claim, subject to the policy's limits of liability. This provision plus any "damages" will not exceed the Each Loss limit of liability shown in the Declarations. You will be responsible for the deductible.

**c.** We will provide defense of claims to which this insurance applies that we have a duty to defend which are:

**(1)** Not seeking monetary damages or not seeking monetary damages other than plaintiff/claimant attorney fees/expenses;

**(2)** Seeking only injunctive or other non-monetary relief or redress; or

**(3)** Seeking monetary "damages" that are not covered by this policy.

**(a)** "Defense expenses" paid in defense of these claims are within the policy's limits of liability. Our obligation to pay "defense expenses" ends when the limit of liability shown in the Declarations has been exhausted by the payment of "defense expenses".

**(b)** We will pay plaintiff/claimant attorney's fees/expenses, if awarded in satisfaction of a claim, subject to the policy's limits of liability. This provision plus any "defense expense" will not exceed the Each Loss limit of liability shown in the Declarations. You will be responsible for the deductible.

**4. Supplementary Payments**

**a.** We will pay in addition to our limit of liability with respect to any claim we defend:

**(1)** All expenses we incur.

**(2)** The cost of bonds required of an insured to release attachments because of the claim, but only to the extent the bond amounts are within the applicable limit of insurance. We are not required to apply for or furnish any bonds.

**(3)** All costs taxed against an insured in the claim except for plaintiff/claimant attorney's fees/expenses.

**(4)** Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

**(5)** Interest on the covered amount of any judgment which accrues after a judgment is entered. Our duty to pay interest ends when we pay, offer to pay, or deposit in court that part of the judgment that is within the applicable limit of insurance.

**(6)** Reasonable expenses an insured incurs at our request, other than loss of earnings. Such expenses do not include salaries of officials or "employees" of the insured.

**5. Exclusions – Coverage A and Coverage B**

Each of the following exclusions is an absolute exclusion with no duty to defend or pay "damages" unless otherwise indicated. If both an absolute exclusion and an exclusion with a duty to defend apply, coverage for "defense expenses" is excluded and we have no duty to defend.

This insurance does not apply to:

**a. Abuse or Molestation**

**(1)** The actual or threatened abuse or molestation by anyone of any person; or

**(2)** The negligent:

**(a)** Hiring;

**(b)** Employment;

**(c)** Investigation;

**(d)** Supervision;

**(e)** Reporting to the proper authorities, or failure to report; or

**(f)** Retention

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by **(1)** above.

This exclusion does not apply to the extent coverage is provided under **Section I 1.b. –** Employment Practices Liability.

**b. "Bodily Injury", "Property Damage", or "Personal and Advertising Injury"**

**(1)** "Bodily injury";

**(2)** "Property damage";

**(3)** "Personal and advertising injury", applicable to Coverage **A** only.

**c. Bonds or Taxes**

**(1)** Debt financing, including but not limited to bonds, notes, debentures, guarantees of debt; or any facts or representations in the process of procuring bonds;

(2) Taxes, including without limitation, the formulation of tax rates, assessments, the collection of taxes and/or the disbursement of tax refunds.

We will defend a claim under **5.c.**, but will have no obligation to pay "damages".

**d. Contractual Liability**

(1) Amounts actually or allegedly due under the terms of a contract;

(2) Failure, refusal, or inability of the insured to enter into, renew or perform any contract or agreement. Exclusion **5.d. (2)** applies to Coverage **A** only; or

(3) The procurement of goods and/or services, including, but not limited to construction, architect, or engineering, contracts or agreements.

We will defend a claim under Exclusion **5.d.**, but will have no obligation to pay "damages".

**e. Knowingly Wrongful Acts, Illegal Acts, Self-Dealing or Illegal Profit**

(1) Any criminal, malicious, fraudulent, knowingly wrongful, or dishonest act or omission. This exclusion shall not apply until it has been established that the insured did commit such "wrongful act".

(2) Any "wrongful act" based upon or attributable to an insured gaining any personal profit or advantage to which an insured is not legally entitled.

(3) The return of any remuneration paid to an insured if such payment is held to be in violation of the law.

**f. Electromagnetic Fields**

(1) Any cost or expense arising out of, resulting from, caused or contributed to by, electromagnetic fields, provided that such injury or damage results from or is contributed to by the hazardous properties of electromagnetic fields;

(2) The costs of abatement or mitigation of:

(a) Electromagnetic fields; or

(b) Exposure to electromagnetic fields;

(3) Any supervision, instructions, recommendations, warning or advise given or which should have been given in connection with paragraphs **(1)** and **(2)** above; or

(4) Any obligation to share damages with or repay someone else who must pay damages in connection with paragraphs **(1), (2)** or **(3)** above.

**g. Expected or Provided Facilities, Products or Services**

Any expense for facilities, products or services normally provided or expected, by anyone, to be provided by the insured. We will defend a claim under Exclusion **5.g.**, but will have no obligation to pay "damages".

**h. Failure to Obtain and Maintain Insurance**

The failure to obtain or maintain any insurance, bond, or self-insurance fund, or the failure to advise or counsel with respect to procuring, obtaining or maintaining of any insurance coverage, bond or self-insurance fund.

**i. Federal, State or Local Laws**

Any actual or alleged violation of the Fair Labor Standards Act (FLSA), Worker Adjustment and Retraining Notification Act (WARN), Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), or the Occupational Safety and Health Act (OSHA).

This exclusion also applies to any rules or regulations promulgated under any of the foregoing and amendments thereto or any similar provisions of any federal, state or local law, and to that part of any "damages" awarded for the cost or replacement of any insurance benefits due or alleged to be due to any current or former "employee".

**j. Fiduciary Liability**

Any obligation or duty imposed by:

(1) The Employee Retirement Income Security Act (ERISA) of 1974, including subsequent amendments or similar federal, state or local law or regulation; or

(2) "Administration" of any "employee benefit program" or self-insurance fund; or

(3) Investment activities, including any actual or alleged violation of any state or federal securities law; or

(4) Activities in any other fiduciary capacity.

**k. Law Enforcement Activities**

Any law enforcement activities to protect the public or property including the operation of adult or juvenile correctional or detention facilities or programs. This exclusion applies to Coverage **A** only.

**l. Land Use**

The direct or indirect operation of the principles of eminent domain, including but not limited to: adverse possession; taking of property; and condemnation or inverse condemnation proceedings.

However, we will defend a claim against the insured for exercising its zoning or permitting duties in a land use regulatory capacity, but we will not have any obligation to pay "damages".

**m. Lead**

(1) Any cost or expense to abate, mitigate, remove or dispose of lead, lead compounds, or materials containing lead;

(2) The actual, alleged or threatened expense arising out of, resulting from, caused by or contributed to by the toxic or pathological properties of lead, lead compounds or lead contained in any materials;

**(3)** Any supervision, instructions, recommendations, warning or advice given or which should have been given in connection with paragraphs **(1)** or **(2)** above; or

**(4)** Any obligation to share damages with or repay someone else who must pay damages in connection with paragraphs **(1), (2)** or **(3)** above.

**n.  National Flood Insurance**

Any insured's:

**(1)** Failure to comply with;

**(2)** Attempt to comply with; or

**(3)** Compliance with

the provisions of the National Flood Insurance Act of 1968 as amended or any similar federal, state, or local laws.

However, this exclusion does not apply if the insured is a school.

**o.  Pollution**

**(1)** Arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

**(2)** Arising out of any governmental direction or request that any insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants; or

**(3)** The failure or refusal of an insured to comply with any federal, state, or local law or regulation regarding pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, asbestos or any substance containing asbestos, fibers, fumes, or any other airborne contaminants, acids, alkalis, sound, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

**p.  "Professional Services"**

Based upon or arising out of the performance of, or failure to render "professional services", even if unpaid, rendered by:

**(1)** You;

**(2)** One of your "employees"; or

**(3)** Anyone else for whom you are responsible.

**q.  War**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**r.  Infringement of Intellectual Property Rights**

Any actual or alleged infringement of trademark, copyright, patent, trade secret or other intellectual property rights; however, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**s.  Wages, Salaries, Fringe Benefits and/or Employee Benefits**

Any wages, salaries, fringe benefits or any other similar employee benefits, educational expenses, overtime or similar "damages", under any federal, state, or local statutes, rules, ordinances or regulations. We will defend a claim under Exclusion **5.s.**, but will have no obligation to pay "damages".

**6.  Additional Exclusions Regarding Coverage B Only**

This insurance does not apply to:

**a.  Contractual Liability**

Any assumption of liability in a contract or agreement. This exclusion does not apply to liability for a "wrongful act" that the insured would have in the absence of the contract or agreement.

**b.  Capital Improvements**

Any cost of complying with physical modifications to your premises or any changes to your usual operations as mandated by the Americans with Disabilities Act of 1990 including any amendment thereto, or any similar federal, state or local law.

We will defend a claim under Exclusion **6.b.**, but will have no obligation to pay "damages".

**c.  Labor Disputes**

Any lockout, strike, picket lines, related worker replacement(s) or other similar actions resulting from labor disputes or labor negotiations or any protections contained within the National Labor Relations Act of 1938 (NLRA).

**d.  Workers Compensation, Disability or Unemployment Compensation Laws**

Any obligation or duty imposed by workers compensation, disability benefits or unemployment compensation law, or any similar law; however, this exclusion shall not apply to any claim based upon, arising from, or in consequence of any actual or alleged retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to any such law.

**SECTION II – WHO IS AN INSURED**

**1.** Each of the following is an insured:

**a.** The "organization" named in the Declarations.

b. The "organization's" past, present, or future lawfully elected, appointed or employed officials.

c. Lawfully appointed members of the commissions, boards, or other units operated under your jurisdiction and within an allocation of your total operating budget, provided however, that none of the above are insureds with respect to operations involving airports, transit authorities, hospitals, nursing homes, housing authorities, port authorities, gas utilities or electric utilities unless specifically stated in the declarations that boards are covered.

d. "Employees", past, present or future of the "organization" while acting within the course and scope of their employment while conducting the business of the "organization".

e. "Volunteers" past, present or future including student teachers while acting within the scope of their duties for the organization.

f. The estates, heirs, legal representatives or assigns of deceased persons who were insureds at the time of the "wrongful act" upon which a claim is based.

2. Insured shall also include those insureds serving on the board of an entity other than the "organization" provided that the following conditions are met:

a. The outside entity is tax exempt;

b. The appointment of the insured to the outside entity is based solely upon that person being an "employee" or lawfully elected or appointed governing board member of the "organization"; and

c. The "organization" directs the insured to serve on the board of the outside entity.

3. Insured does not include any person working on retainer and/or as an independent contractor.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or brought; or

c. Person or organizations making or bringing claims.

2. The Each Loss limit is the most we will pay for the sum of "Damages" arising out of:

a. Coverage A, Public Officials Liability and

b. Coverage B, Employment Practices Liability.

The aggregate limit is the most we will pay for all losses arising from all "wrongful acts" to which this insurance applies and for which a claim is first made during the policy period.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – CONDITIONS

1. **Your Duties In The Event Of A Wrongful Act**

a. We or our agent must have prompt written notice from you or someone on your behalf of any "wrongful act" that may involve this policy. The notice should identify this policy and give us the facts of the "wrongful act" including names and addresses of claimants and witnesses.

b. If you receive a claim, you agree to immediately furnish us with a copy as well as copies of any other papers pertinent to the "wrongful act".

c. You must authorize us to obtain needed records and other information.

d. You further agree to cooperate with us in the defense of any "wrongful act" likely to involve this policy. You shall not, except at your own expense, voluntarily make any payment, assume any obligation, or incur any expense unless we provide written consent to do so.

e. You must assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of injury or damage to which this insurance may also apply.

2. **Transfer Of Right Of Recovery Against Others To Us**

If an insured has rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help enforce them.

3. **Action Against Us**

No legal action may be brought against us unless:

a. You have complied with all the terms of the policy; and

b. The amount for which you are legally liable has been determined by court judgment; or

c. An agreement has been signed by you, us and the claimant.

4. **Deductible**

The deductible is the amount shown in the Declarations and is the amount for which you are responsible. A single deductible applies to each claim and can be met either by "damages" or

"defense expenses", or a combination of both. The deductible does not reduce the applicable liability limits. We may, or will if required by law, pay part of or all of any deductible amount to effect settlement of any claim. Upon notice of our payment of a deductible amount, you shall promptly reimburse us for the part of the deductible amount we paid.

**5. Bankruptcy**

If you become bankrupt or insolvent, we will still be responsible for our obligations under this policy.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the application are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Other Insurance**

This insurance is excess over other insurance whether primary, excess, contingent or on any other basis, except for insurance purchased specifically to apply in excess of this insurance. When this insurance is excess, we have no duty to defend the insured against any claim if any other insurer has a duty to defend the insured against that claim. When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

**a.** The total amount that all other insurance would pay in the absence of this insurance; and

**b.** The total of all deductible and self-insured amounts under the other insurance.

If we share the loss, we will do so by equal share contribution if allowed by the other insurance. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If equal share contribution is not permitted, we will contribute by the ratio our limit bears to the total applicable limits of all insurance. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Other insurance includes, but is not limited to, coverage or benefits provided by self-insurance arrangements, pools, self-insurance trusts, captive insurance companies, retention groups, reciprocal exchanges, or any other plan or agreement of risk transfer or assumption.

**8. Severability**

Except with respect to the limits of insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

**a.** As if each insured were the only insured; and

**b.** Separately to each insured against whom a claim is made.

**9. State Law**

If this policy conflicts with your state or local laws, it is changed to conform to the laws.

**10. When We Do Not Renew**

If We decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – EXTENDED REPORTING PERIODS**

**1.** We will provide an Extended Reporting Period as described below, if:

**a.** This Coverage Part is canceled or not renewed for any reason except non-payment of the premium; or

**b.** We renew or replace this Coverage Part with other insurance that:

**(1)** Provides claims-made coverage for "wrongful act" liability; and

**(2)** Has a "retroactive date" later than the one shown in this Coverage Part's Declarations; or

**(3)** We replace the Coverage Part with other insurance that applies to "wrongful act" liability on other than a claims-made basis.

**2.** Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims for "damages" due to a "wrongful act" that occurs before the end of the policy period but not before the "retroactive date", if any, shown in the Declarations.

Once in effect, Extended Reporting Periods may not be canceled.

**3.** There are two Extended Reporting Period options available described below:

**a.** A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for 60 days with respect to claims arising from "wrongful acts" not previously reported to us.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

The Basic Extended Reporting Period does not reinstate or increase the Limit of Liability.

**b.** A Supplemental Extended Reporting Period Endorsement is available, for an additional premium charge. The Supplemental Extended Reporting Period will be as set forth in either **(1)** or **(2)** below:

(1) Twelve months starting when the Basic Extended Reporting Period, set forth in Paragraph **3.** above ends; or

(2) Sixty months starting when the Basic Extended Reporting Period, set forth in Paragraph **3.** above ends.

   (a) You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

     We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

     i) The exposures insured;

     ii) Previous types and amounts of insurance;

     iii) Limits of Insurance available under this Coverage Part for future payment of damages; and

     iv) Other related factors.

   (b) The additional premium will be:

     i) Ninety percent (90%) of the annual premium for this Coverage Part when the twelve month option is chosen; or

     ii) Two hundred percent (200%) of the annual premium for this Coverage Part when the sixty month option is chosen.

     This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period.

   (c) If the Supplemental Extended Reporting Period is in effect, we will provide the Supplemental Aggregate Limit of Insurance, as indicated in the Supplemental Extended Reporting Period Endorsement, but only for claims first received and recorded during the Supplemental Extended Reporting Period. For those claims first received during the Supplemental Extended Reporting Period, coverage is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

## SECTION VI – DEFINITIONS

1. **"Administration"** means:

   a. Giving counsel to "employees" with respect to "employee benefit programs";

   b. Interpreting "employee benefit programs";

   c. Handling of records in connection with "employee benefit programs"; and

   d. Effecting enrollment of "employees" under "employee benefit programs".

2. **"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are broadcast or published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

3. **"Bodily injury"** means "bodily injury", sickness or disease sustained by a person, including death resulting from any of these at any time.

   "Bodily injury" does not include mental anguish that results from an "employment wrongful act".

4. **"Damages"** means those amounts that the insured becomes legally obligated to pay for claims arising out of a "wrongful act" to which this insurance applies.

   "Damages" does not include:

   a. Fines or penalties imposed by law;

   b. Salaries of your "employees" and office expenses incurred by you; or

   c. Judgments, or awards arising out of matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

5. **"Defense expenses"** are sums payable to others for investigation, litigation, negotiation, or settlement of any claim which we deem expedient. "Defense expenses" do not include our own internal company claim adjustment expenses, or any plaintiff/claimant attorney's fee/expenses.

6. **"Employee"** means an individual whose labor or service is engaged by and directed by the insured or a member of the "organization." This includes part-time, seasonal and temporary employees as well as any individual employed in a supervisory or managerial position. But "employee" does not include an independent contractor or any "employees" of any independent contractor, "leased worker", or "temporary worker".

7. **"Employee benefit programs"** means:

   a. Group life insurance, group accident or health insurance, investment plans or savings plans, profit sharing plans, pension plans and stock subscription plans, provided that no one other than an "employee" of the insured may subscribe to such insurance or plans; and

   b. Unemployment insurance, social security benefits, worker's compensation and disability benefits.

8. **"Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

9. **"Organization"** means the entity named in the Declarations as the Named Insured.

10. **"Personal and advertising injury"** means injury, other than "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

11. **"Professional services"** means anyone employed or serving in any of the following professions while performing their duties as such:

    a. The practice of medicine, including, but not limited to, physician, surgeon, osteopath, chiropractor, anesthesiologist, dentist, psychiatrist, psychologist, nurse, or pharmacist; and

    b. The practice of law, including but not limited to, the judiciary.

    "Professional services" shall not include a response to an official call to duty for emergency services by an "organization's" fire, ambulance or rescue facility.

12. **"Property damage"** means:

    a. Physical injury to tangible property, including all resulting loss of use of that property; and

    b. Loss of use of tangible property that is not physically injured.

13. **"Retroactive date"** means the date specified in the Declarations. Those "wrongful acts" that occur prior to the "retroactive date" are not covered by this policy.

14. **"Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

15. **"Volunteer"** means any person whose services are uncompensated and whose activities are directed and supervised by, and for the benefit of the "organization".

16. **"Wrongful act"** includes any of the following:

    a. **"Employment wrongful act"** means any of the following actual or alleged practices directed against any of your "employees", "leased workers", "temporary workers", former "employees", or any applicant for employment with you and for which remedy is sought under any federal, state or local statutory or common civil employment law:

       (1) Wrongful refusal to employ an applicant for employment;

       (2) Wrongful failure to promote an "employee", wrongful deprivation of career opportunity; or wrongful failure to grant tenure;

       (3) Wrongful: demotion, retaliation, evaluation, supervision, reassignment, or discipline;

       (4) Wrongful termination of employment, including retaliatory or constructive discharge;

       (5) Employment related misrepresentation;

       (6) Sexual harassment or workplace harassment;

       (7) Any employment related coercion discrimination, or humiliation, as a consequence of race, color, creed, national origin, marital status, medical condition, gender, age, physical and or mental impairments, pregnancy, sexual orientation or preference or other status that is protected pursuant to any applicable federal, state, or local employment ordinance or statute; or

       (8) Employment-related libel, slander, defamation, or invasion of privacy.

    b. **"Public official's wrongful act"** shall mean any of the following:

       (1) Actual or alleged errors;

       (2) Misstatement or misleading statement;

       (3) Act, omission, neglect, or breach of duty by an insured

       in the discharge of "organizational" duties.

       "Public Officials Wrongful Act(s)" does not include an "employment wrongful act".

**LINEBACKER**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

LINEBACKER PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

1.  The insurance does not apply:
    A.  To "loss":
        (1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.
    B.  To "loss" resulting from the "hazardous properties" of "nuclear material", if:
        (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;
        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
        (3) The "loss" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "loss" to such "nuclear facility" and any property thereat.
2.  As used in this endorsement:
    "Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium; (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Loss" includes all forms of radioactive contamination of property.

LINEBACKER

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DATA PROCESSORS ERRORS AND OMISSIONS EXCLUSION

This endorsement modifies insurance provided under the following:

LINEBACKER PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

The following exclusion is added to Paragraph **5. Exclusions – Coverage A and Coverage B** of **Section I – Coverages**:

This insurance does not apply to any liability arising out of any "wrongful act", error or omission with respect to data processing services rendered by, or that should have been rendered by:

1.  The insured; or
2.  Any person or organization:
    a.  For whose acts, errors or omissions the insured is legally responsible; or
    b.  From whom the insured assumed liability by reason of a contract or agreement.

**LINEBACKER**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TORT LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

LINEBACKER PUBLIC OFFICIAL AND EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

This policy does not apply to any claim against an Insured for which the Insured

**(1)** is immune from liability by the provisions of any statute or where the action based upon such claim has been barred or abated by operation of statute or rule of civil procedure or

**(2)** is not immune from such liability described in **(1)** above but is immune from further liability above any specific statutory limits cap on the maximum liability of the insured.  However, this Item **(2)** does not apply to the extent (if any) this policy provides coverage up to the maximum statutory liability limits cap.

The Company will defend a claim under this endorsement, but will have no obligation to pay "damages."

**LINEBACKER**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

LINEBACKER PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

**A.** The following exclusion is added to **Section I – Coverage**, Paragraph **5. Exclusions – Coverage A** and **Coverage B**.

   **5. Exclusion – Coverage A** and **Coverage B**

     This insurance does not apply to:

     **Fungi or Bacteria**

     **1.** Any liability, "defense expenses", or other cost that would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

     **2.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

     This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following definition is added to the **DEFINITIONS SECTION** of the coverage form.

   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**LINEBACKER**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

LINEBACKER PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" includes the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**LINEBACKER**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES
# RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

LINEBACKER PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

"Damages" arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" includes the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**LINEBACKER**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXTENDED REPORTING PERIOD
## AMENDATORY ENDORSEMENT

This endorsement modifies the insurance provided under the following:

LINEBACKER PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

Paragraph **3.b.** of **SECTION V – Extended Reporting Periods** is replaced with the following:

**A.** Supplemental Extended Reporting Period Endorsement is available, for an additional premium charge.   The Supplemental Extended Reporting Period will be as set forth in either **1.** or **2.** below:

  **1.** Twelve months starting when the Basic Extended Reporting Period, set forth in Paragraph **3.** above ends; or

  **2.** An unlimited duration starting when the Basic Extended Reporting Period, set forth in Paragraph **3.** above ends.

    **a.** You must give us a written request for the endorsement within 60 days after the end of the policy period.  The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

    We will determine the additional premium in accordance with our rules and rates.  In doing so, we may take into account the following:

      **(1)** The exposures insured;

      **(2)** Previous types and amounts of insurance;

      **(3)** Limits of Insurance available under this Coverage Part for future payment of damages; and

      **(4)** Other related factors.

  **b.** The additional premium will be:

    **(1)** Ninety percent (90%) of the annual premium for this Coverage Part when the twelve month option is chosen; or

    **(2)** Two hundred percent (200%) of the annual premium for this Coverage Part when the unlimited duration option is chosen.

      This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period.

  **c.** If the Supplemental Extended Reporting Period is in effect, we will provide the Supplemental Aggregate Limit of Insurance, as indicated in the Supplemental Extended Reporting Period Endorsement, but only for claims first received and recorded during the Supplemental Extended Reporting Period. For those claims first received during the Supplemental Extended Reporting Period, coverage is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

LINEBACKER

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DATA COMPROMISE EXCLUSION

This endorsement modifies insurance provided under the following:

LINEBACKER PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

**A.** The following exclusion is added to Paragraph **5. Exclusions – Coverage A** and **Coverage B** of **SECTION I – COVERAGES**

**Data Compromise Liability**

**(1)** Any actual or alleged "damages" arising out of a "network and information security wrongful act".

**(2)** Any "wrongful act" arising out of any failure to provide access to your website, or "communications network" that was expected or intended by an insured.

**(3)** Any "wrongful act" arising out of an internet service interruption or failure.

**Government Demands or Proceedings**

Any demand made or proceeding brought by:

**a.** the Federal Trade Commission;

**b.** the Federal Communications Commission; or

**c.** any other federal, state, local government agency or entity;

arising out of any "wrongful act" of any Insured.

**B.** The following definitions are added to the **DEFINITIONS SECTION** of the coverage form.

**"Computer malware"** means malicious code that is introduced through your website or "communications network".

**"Communications network"** means any computer or communications network you own, operate, rent, lease, license or borrow from others.

**"Network and information security wrongful act"** means:

**a.** failure to prevent the transmission of "computer malware";

**b.** failure to provide any authorized user of your website or "communications network" access to such a website or "communications network";

**c.** failure to prevent unauthorized access to, or use of, electronic data containing "personally identifying information" of others.

**"Personally Identifying Information"** means information that could be used to commit fraud or other illegal activity involving the credit or identity of an individual. This includes, but is not limited to, Social Security numbers or account numbers correlated with names and addresses.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses with no correlated Social Security numbers or account numbers

LINEBACKER

## IMPORTANT CHANGES IN YOUR COVERAGE

# ADVISORY NOTICE TO POLICYHOLDERS

This is a summary of the major changes in your Linebacker Coverage Form.   This notice does not reference every editorial change made in the coverage form.   No coverage is provided by this summary nor can it be construed to replace any provisions of your policy or endorsements.   You should read your policy and review your declaration page for complete information on the coverages you are provided.  If there is any conflict between the policy and this summary, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Some of the language of the new policy has been restated and repunctuated for clarity and readability but with no change in coverage intent.

The major areas within the policy that broaden, reduce or clarify coverage are highlighted below.  The material is organized by individual coverage forms and endorsements; however, not all coverage forms or endorsements are included in a particular policy.

### LINEBACKER PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

I. **CLARIFICATION OR PROCEDURAL CHANGE**

- Deleted endorsement statement from the heading of the coverage form.
- Added defense expense language into paragraph **1.a.** and **b.** of **SECTION I COVERAGES** to clarify intent to pay defense expense.
- Amended name of paragraph **2.** of **SECTION I COVERAGES** to **Coverage Activation** to clarify it contains key coverage provisions of the coverage form.
- Revised and combined paragraphs **3.** and **4.** of **SECTION I COVERAGES** into paragraph **3. Defense and Defense Expenses** to eliminate duplication and clarify key defense provisions of the policy.
  - Paragraph **3.a.** addresses provisions applicable to any claim we defend.
  - Paragraph **3.b.** addresses provisions applicable to claims which we have an obligation to pay defense and damages.
  - Paragraph **3.c.** addresses provisions applicable to claims which we have only an obligation to defend.
  - Paragraphs **3.b.(3)** and **3.c.(b)** were moved from **Supplementary Payments** paragraph **b.** and **c.**
- **Supplementary Payments** provisions was moved from paragraph **7.**, to paragraph **4.**, closer to defense provisions of the policy to which they apply.
  - Revised paragraph **2.** clarifying coverage applies for the cost of bonds and within the limit of insurance.
  - Revised paragraph **5.** is amended to clarify interest only applies to that part of a covered claim within the limit of insurance of the policy.
- An opening paragraph was added to **SECTION I**, paragraph **5. Exclusions – Coverage A and Coverage B** clarifying coverage intent in the event more than one exclusions applies to the same claim.
- Exclusionary language "any wrongful act arising out of" was deleted from exclusions **5.a., b., c., d., e., f., h., j., l., m., n., o., p., q., r., and 6.a., c.** and **d.**
- Exclusion **a. Abuse or Molestation** was revised deleting the "in the care custody or control" of the insured language to clarify the exclusion applies to any abuse or molestation.
- Exclusion **a. Abuse or Molestation** was revised adding a statement to clarify the exclusion does not apply to the extent coverage is provided by employment practices liability under the policy.
- Exclusion **c. Bonds or Taxes** was revised to move "construction contracts" to exclusion **d.** and clarify the exclusion for any bond or taxation activities.
- Exclusion **d. Contractual Liability** was revised adding construction contract exclusion language.
- Exclusion **e. Knowingly Wrongful Acts, Illegal Acts, Self Dealing or Illegal Profit** was revised replacing Criminal Acts language with Knowingly Wrongful Acts, the same intent applies.
- Exclusion **e.** paragraph **(1)** is revised deleting the "in fact" language clarifying the wrongful act must only be established to apply the exclusion.

- Exclusion **e.** paragraph **(3)** is revised deleting the "by the courts" language clarifying the payment only has to be held to be in violation of the law.
- Exclusion **i. Federal, State or Local Laws** was moved from paragraph **6. Additional Exclusions Regarding Coverage B Only** to clarify any violation of federal state or local laws is excluded.
- Exclusion **j. Fiduciary Liability** is revised adding language to clarify any investment activities or violation of state or federal securities laws are excluded.
- Exclusion **k. Law Enforcement Activities** is revised to clarify no coverage applies to the operation of any adult or juvenile correctional or detention facilities or programs.
- Exclusion **t. Wages, Salaries, Fringe Benefits and/or Employee Benefits** was moved from paragraph **6. Additional Exclusions Regarding Coverage B Only** to clarify this exclusion also applies to public officials wrongful acts.
- Exclusion **6.d. Workers Compensation, Disability, or Unemployment Compensation Laws** revised to clarify any duty or obligation is excluded.
- A paragraph is added to **SECTION III LIMITS OF INSURANCE** paragraph **2.** to clarify the aggregate limits provisions of the policy.
- Paragraph **8. Severability** of **SECTION IV CONDITIONS** is revised to include the provisions of CL7184 Severability Amendment.  This form will be withdrawn from all states.
- **SECTION V EXTENDED REPORTING PERIODS** is revised to clarify the provisions of the policy relating to extended reporting periods. No changes to the policy apply.
  - Paragraph **3.a.** provides details of the Basic Extended Reporting Period.
  - Paragraph **3.b.** provides details of Supplemental Extended Reporting Period.
- Definition **4. Damages** of **SECTION VI DEFINITIONS** is revised as follows:
  - Paragraph **a.** clarifies damages does not apply to fines or penalties imposed by law.
  - Paragraph **c.** is added to clarify the policy is not intended to provide coverage for judgments or awards, including punitive, exemplary or multiple awards if they are uninsurable under applicable state law.
- Definition **6. Employee** is revised with regard to independent contractors to clarify employees of independent contractors are not considered an employee of the insured.
- Definition **16. Wrongful Act** is revised as follows:
  - Paragraph **a.(2)** added "wrongful failure to grant tenure.
  - Paragraph **a.(3)** deleted "negligent" with regard to "wrongful retaliation and supervision.
  - Paragraph **a.(6)** is added specifically identifying sexual harassment or workplace harassment as covered events.
  - Paragraph **a.(7),** previously **(6)**, is revised clarifying by addition of a statement indicating coverage for any protected status pursuant to any federal state or local employment law.
  - Paragraph **a.(8)** was revised to clarify coverage intent to cover employment related libel, slander, defamation or invasion of privacy.
  - Paragraph **b. Public Officials Wrongful Act** is revised adding a statement to clarify public officials wrongful acts does not include an employment wrongful act.

## ENDORSEMENTS

### I.  CLARIFICATION OR PROCEDURAL CHANGE

- **CL7000A** Linebacker Automated Declaration – Revised to allow for application of claims made and occurrence linebacker policies, revised "each wrongful act" to "each claim", and deleted personal injury reference.
- **CL7000.1A** Linebacker Automated Declaration – Revised to "each wrongful act" to "each claim", and deleted personal injury reference.
- **CL7114** Limited Public Officials Errors and Omissions for Professionals – Revised title of endorsement to clarify coverage intent, and amended reference to exclusion to match the coverage form.
- **CL7119.1** Limited Errors and Omissions for School Professionals – Revised title of the form to clarify coverage intent, and amended the exclusion reference to match the coverage form.
- **CL7128** Tort Liability Endorsement – Revising to delete quotations around claim.  Claim is no longer a defined term.
- **CL7130.1** Loss of Salary or Fringe Benefits Endorsement – Revising form to match revised coverage form, and clarify what is not included as damages.

- **CL7149** Health Care Extension – Revised reference to exclusion to match coverage form and reference to specific definition section.
- **CL7153** Fungi or Bacteria Exclusion – Revised reference to specific definition section
- **CL7173** Supplemental Extended Reporting Period Endorsement – Added language to clarify aggregate limit provisions
- **CL7173.1** Supplemental Extended Reporting Period Endorsement – Montana - Added language to clarify aggregate limit provisions
- **CL7176.2** Extended Reporting Period – Virginia - Added language to clarify aggregate limit provisions and correct paragraph 5 adding "ends".
- **CL7177** Illinois Changes Endorsement – Revised definition matching revisions in the coverage form.
- **CL7179** Linebacker Amendment – Land Use Endorsement - Revised definition of "land use" matching revisions in the coverage form, and amended reference to the definitions section.
- **CL7179.1** Linebacker Amendment – Michigan Land Use Endorsement - Revised definition of land use; coverages and definitions matching revisions in the coverage form.
- **CL7181** Limited Law Enforcement – Corrected reference to definition to match revised coverage form.
- **CL7202** Data Compromise Exclusion – Amended reference to definition section.
- **CL7203** Punitive and Exemplary Damages – Corrected reference to the definitions section and corrected the definition of "damages"

## II.  OBSOLETE FORMS
- **CL7184** Severability Amendment – withdrawn in all states.

COMMERCIAL INTERLINE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# KANSAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

LINEBACKER PUBLIC OFFICIALS AND EMPLOYMENT RELATED PRACTICES LIABILITY COVERAGE FORM
LAW ENFORCEMENT LIABILITY COVERAGE FORM
DATA COMPROMISE COVERAGE FORM
IDENTITY RECOVERY COVERAGE FORM

**A.** Paragraph **2.** of the **Cancellation** Common Policy Conditions is replaced by the following:

**2. Cancellation**

**a.** We may cancel this policy by mailing to the first Named Insured written notice of cancellation, stating the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium, or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason

**b.** If this policy has been in effect for 90 days or more, or if this is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** This policy was issued because of material misrepresentation;

**(3)** You or any other insured violated any of the material terms and conditions of this policy;

**(4)** Unfavorable underwriting factors, specific to you, exist that were not present at the inception of the policy;

**(5)** A determination by the insurance commissioner that continuation of coverage could place us in a hazardous financial condition or in violation of the laws of Kansas; or

**(6)** A determination by the insurance commissioner that we no longer have adequate reinsurance to meet our needs.

The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 60 days prior to the expiration of the policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

INTERLINE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – MIXED DUST PNEUMOCONIOSIS, LUNG DISEASE OR AILMENT

This endorsement modifies insurance provided under the following:

    BUSINESSOWNERS COVERAGE FORM
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    LINEBACKER PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM
    COMMERCIAL UMBRELLA COVERAGE FORM
    LAW ENFORCEMENT LIABILITY COVERAGE FORM

This insurance does not apply to:

Any injury, damage, expense, cost, loss, liability, defense or legal obligation arising out of, resulting from or in any way related to, in whole or in part, mixed dust pneumoconiosis or any lung disease, including but not limited to, pleural plaques, asbestosis, silicosis, lung cancer, emphysema, bronchitis, or other pneumoconiosis-related ailment, including, but not limited to, arthritis, cancer, lupus, heart, kidney or gallbladder disease.

COMMERCIAL INTERLINE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections and Surveys

1. We have the right to:

   a. Make inspections and surveys at any time

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**COMMERCIAL INTERLINE**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

> LINEBACKER PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM
> LAW ENFORCEMENT LIABILITY COVERAGE FORM
> DATA COMPROMISE COVERAGE FORM
> IDENTITY RECOVERY COVERAGE FORM

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**COMMERCIAL INTERLINE**

# KANSAS COMPANY ELIMINATION ENDORSEMENT

The Kansas Insurance Department requires the company to explain by this endorsement that:

Employers Mutual Casualty Company,

is licensed to do insurance business in Kansas, but:

EMCASCO Insurance Company
Union Insurance Company of Providence
EMC Property & Casualty Company
Dakota Fire Insurance Company
Illinois EMCASCO Insurance Company and
Hamilton Mutual Insurance Company

are either not licensed companies in Kansas or are not authorized to provide the insurance afforded by this policy and reference to such is hereby deleted from the policy.

This endorsement in no way affects the coverage under the policy/bond to which it is attached but is intended only to clarify the name of the issuing company.